UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RONALD CHRISTOPHER DEKEYZER                    Case No. 20-11271-ta13
and SHERRY LYNN DEKEYZER,

       Debtors.

## OPINION

Before the Court is the fee application of Debtors' chapter 13 counsel, New Mexico Financial and Family Law, P.C. ("Counsel"). In the application, Counsel seeks allowance of $14,020 in professional fees, plus costs and New Mexico gross receipts tax. Because the amount sought is significantly higher than the average fee application for a chapter 13 case in this district, the Court set the matter for hearing. The Court now concludes that it will allow Counsel's professional fees in the amount of $8,000, plus costs and tax.

1.   Facts.

The Court finds:[1]

On or about January 10, 2020, Debtors retained Counsel to file this case. The billing rates for the professionals who worked on the case were $250/hour for Don Harris and Dennis Banning and $150/hour for Jill Stevenson. Debtors gave Counsel a $3,000 retainer.

Counsel filed the case on June 24, 2020. The initial filings included the petition, disposable income calculation, schedules, statement of financial affairs, plan, credit counseling certificate, and attorney fee disclosure. The attorney fee disclosure stated that Counsel had received a $3,000

---

[1] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

retainer and had agreed to represent Debtors for $250/hr. In Debtors' proposed plan, Counsel estimated its total fees, costs, and taxes would be about $7,000. Given the $3,000 retainer, Counsel estimated that $4,000 would be paid through the plan.

Debtors' schedules reflect total assets of $684,091.00 and total debts of $420,905.92 (including total nonpriority unsecured debts of $160,193.61).

Debtors included Mr. DeKeyzer's mother, age 87, as a dependent on Form 122C and on Schedule J. She lives with Debtors. However, Debtors did not include the mother's social security income on the Form or Schedule I. Because of that, Debtors calculated their monthly disposable income to be about $571.

Debtors' plan, as filed on the petition date, is relatively simple. The proposed monthly plan payment is $600, for 60 months. The proposed plan pays Debtors' home mortgage "outside" the plan but pays a car loan "inside" the plan. There were essentially no pre-petition arrearages on either loan, which made plan drafting easier.[2]

The plan drew two objections, from the New Mexico Taxation and Revenue Department and the chapter 13 trustee. The Taxation and Revenue's objection was resolved when Debtors filed their 2019 tax return. The trustee's objection concerned Debtors' calculation of monthly disposable income and the size of Debtors' monthly plan payment. In particular, the trustee objected to counting Mr. DeKeyzer's mother as a dependent without including her social security income as part of Debtors' monthly income.[3] The trustee also objected to discrete expenses totaling $434/month.

---

[2] Debtors' car loan was current through May 2020. Why Debtors chose to pay the loan through the chapter 13 trustee rather than outside the plan is not in the record.

[3] The mother's social security income is excluded from the definition of "current monthly income," *see* § 101(10A)(B)(ii)(I), but any amount paid by the mother on a regular basis for the household expenses would be included. § 101(10A)(B)(i); *see also In re Olguin*, 429 B.R. 346, 349-50 (Bankr. D. Colo 2010).

The claims bar date was September 2, 2020. 22 claims were filed, totaling $412,018.64. Of this amount, $253,146.01 is secured, $2,152.48 is priority (IRS), and $156,720.15 is nonpriority unsecured.

The Court held a preliminary hearing on plan confirmation on September 1, 2020. A final hearing set for October 6, 2020, was vacated by stipulation and rescheduled for November 10, 2020.

On October 19, 2020, Debtors filed an amended Form 122C, which did not list Mr. DeKeyzer's mother as a dependent. This increased the monthly disposable income to $1,106.01.

Debtors' plan was confirmed October 29, 2020, by a stipulated order agreed to by Debtors and the chapter 13 trustee. In the order Debtors agreed to increase their plan payments from $600 to $1,571 a month, starting in November 2020.

With the increase in the monthly plan payment, Debtors' plan pays general unsecured creditors about 60% of their claims. The claims filed in the case are fairly consistent with the claims listed on Debtors' Schedules D-F. Debtors did not object to any proofs of claim.

Two complications arose during the case. First, Mr. DeKeyzer has an ex-wife living in Louisiana, and Counsel billed a couple of hours learning whether their Louisiana qualified domestic relations order (QDRO), which split retirement accounts in their divorce, affected Debtors' plan.

Second, Debtors filed two motions to incur debt, one so Mr. DeKeyzer could buy a car for his disabled adult son in Louisiana and the other to pay for LASIK eye surgery. Both motions were granted.

Additionally, Counsel represented that Debtors in this case required more "hand holding" than average.[4] This is reflected in Counsel's fee application; several hours were dedicated to emails and conference calls with Debtors, scheduling the calls, or debriefing after the calls.

Counsel billed Debtors 51.7 hours of attorney time and 7.3 hours of paralegal time to get the case through confirmation and the post-confirmation motion to incur debt. The time spent and fees billed can be categorized as follows:

| Category | Attorney time | Paralegal time | Combined fees |
|---|---|---|---|
| Preliminaries; drafting schedules and SOFA | 3.3 | 4.8 | $1,545 |
| Plan drafting | 3.6 | 1.3 | $1,095 |
| Claims review | 6.5 | | $1,625 |
| Creditors' meeting | 3.0 | 0.2 | $780 |
| Objections to confirmation | 7.3 | 0.2 | $1,855 |
| Fee application | 1.1 | | $275 |
| Motions to incur debt | 5.7 | | $1,425 |
| Louisiana QDRO | 1.9 | 0.1 | $490 |
| Means test/feasibility | 9.7 | 0.2 | $2,455 |
| Communication with clients and miscellany | 9.6 | 0.5 | $2,475 |
| Total | 51.7 hours | 7.3 hours | $14,020 |

2.    General Requirements for Debtor Attorney Fee Allowance in Chapter 13.

Compensation of counsel for chapter 13 debtors is governed by § 330(a)(4)(B),[5] which provides:

> In a ... chapter 13 case ... the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

---

[4] This may have been a result of the large increase in the plan payments. Based on several of Counsel's time entries, it appears that Debtors were taken aback by the increase.
[5] Statutory references are to 11 U.S.C.

This subsection was added to the bankruptcy code by the Bankruptcy Reform Act of 1994.[6]

"[A] chapter 13 debtor has the right to employ counsel so long as the following two requirements are met: 1) [disclosure of] compensation paid or agreed to be paid pursuant to section 329 and 2) . . . approval of post-petition payments from property of the estate pursuant to section 330(a)(4)(B)." *In re Rosales,* 621 B.R. 903, 922 (Bankr. D. Kan. 2020), quoting *In re Cahill,* 478 B.R. 173, 176 (Bankr. S.D.N.Y. 2012).

Compensation generally can include reimbursement of expenses advanced, e.g., filing fees, witness fees, and deposition costs. *See, e.g., In re Riley*, 923 F.3d 433, 443 (5th Cir. 2019); *In re Genatossio*, 538 B.R. 615, 617 (Bankr. D. Mass. 2015) (§ 330(a)(4)(B) permits an award of fees and expenses); *In re Marvin*, 2010 WL 2176084 (Bankr. N.D. Iowa) (allowing reimbursement of expenses); *In re Williams*, 384 B.R. 191, 194 (Bankr. N.D. Ohio 2007) (court may award fees and expenses); *but see In re Frazier*, 569 B.R. 361, 369 (Bankr. S.D. Ga. 2017) (some expenses, but not advancement of the filing fee, can be reimbursed from the estate); *In re Marotta*, 479 B.R. 681, 689–90 (Bankr. M.D.N.C. 2012) (expenses, and specifically the filing fee, not recoverable under § 330(a)(4)(B)).

"The attorney seeking compensation bears the burden of proving entitlement to all fees and expenses requested." *In re Dille*, 2021 WL 864201, at *2 (Bankr. W.D. Mo.), citing *In re Kula*, 213 B.R. 729, 736 (8th Cir. BAP 1997); *In re Cooke,* 2020 WL 6821730, at *3 (Bankr. D. Ariz.), citing *In re Roderick Timber Co.,* 185 B.R. 601, 606 (9th Cir. BAP 1995). "This burden is not to be taken lightly given that every dollar expended on legal fees results i[n] a dollar less that is

---

[6] The Reform Act also deleted the language "or to the debtor's attorney" from § 330(a)(1). Until then, § 330(a)(1) had included the debtor's attorney in the list of persons who could be paid from the estate. In *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004), the Supreme Court held that the Reform Act meant that debtor's counsel in a chapter 12 or 13 case could only be compensated under § 330(a)(4)(B).

available for distribution to the creditors." *Dille*, 2021 WL 864201, at *2, citing *In re Ulrich*, 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014).

In determining the allowance of compensation under § 330(a)(4)(B), the Court considers the factors set out in § 330(a)(3). *Rosales*, 621 B.R. at 927; *In re Hunt*, 588 B.R. 496, 499 n.4 (Bankr. W.D. Mich. 2018).

3.    Determining How Much Compensation Should be Allowed.

"To be compensable, the fees must be for services that were 'actual' and 'necessary.' § 330(a)(1)(A). If the applicant clears these hurdles, then the fees must be 'reasonable.'" *In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.); *see also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993); *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 810 (10th Cir. 2005).

a.    Actual Services. Compensation can only be allowed for services actually performed. *See, e.g., In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr. D. Colo. 1989) ("The Code requires that the services actually be performed before the compensation is awarded. Therefore, work to be performed does not qualify for actual services rendered"). This is not an issue here.

b.    Necessary Services. Allowance is limited to "services [that] were necessary to the administration of, or beneficial toward the completion of a case." *In re Schupbach Investments, LLC*, 521 B.R. 449, at *8 (10th Cir. BAP 2014); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *3 (Bankr. D.N.M.) (same). In chapter 13 cases, the benefit can be to the debtor rather than to the estate. *In re Guajardo*, 2020 WL 4919794, at *3 (Bankr. D.N.M.); *In re Williams*, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007) (§ 330(a)(4)(B) is an exception to the general rule that professionals'

services must benefit the estate to be compensable); *In re Argento*, 282 B.R. 108, 116 (Bankr. D. Mass. 2002) (same).

Reviewing the docket in this case and Counsel's fee bills, the Court concludes that some work was necessary in each category outlined in the table above, but not all is compensable. The time Counsel spent scheduling and setting up conference calls with the Debtors is clerical and cannot be compensated by the estate. *See In re Guajardo*, 2020 WL 762828, at *4 (Bankr. D.N.M.) ("While necessary in every legal proceeding, clerical work cannot reasonably be passed onto clients or the estate and should instead be absorbed by the firm as overhead."); *see also In re CF&I Fabricators of Utah, Inc.*, 131 B.R. 474, 489 (Bankr. D. Utah 1991) (same); *In re Lady Baltimore Foods, Inc.*, 2004 WL 2192368, at *1 (Bankr. D. Utah) (same); *In re Guzman*, 2009 WL 607401, at *1 (Bankr. D.N.M.) (same). If Counsel's attorneys do their own scheduling of client meetings, conference calls, and the like, they must not bill for it.

c.    <u>Reasonable Compensation</u>. In the Tenth Circuit, bankruptcy courts ruling on the reasonableness of professional fees must weigh the factors in § 330(a)(3) and those discussed in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246-47 (10th Cir. 2013). Under § 330(a)(3) the Court must consider:

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The *Johnson* factors are:

> (1) The time and labor required;
> (2) The novelty and difficulty of the questions;
> (3) The skill requisite to perform the legal service properly;
> (4) The preclusion of other employment by the attorney due to acceptance of the case;
> (5) The customary fee;
> (6) Whether the fee is fixed or contingent;
> (7) Time limitations imposed by the client or the circumstances;
> (8) The amount involved and the results obtained;
> (9) The experience, reputation, and ability of the attorneys;
> (10) The "undesirability" of the case;
> (11) The nature and length of the professional relationship with the client; and
> (12) Awards in similar cases.

The Court weighs the § 330(a)(3) and *Johnson* factors as follows:

*§ 330(a)(3)(A): Time spent*. Counsel spent significantly more time on this case than in a typical chapter 13 case in this district.

*§ 330(a)(3)(B): Rates charged*. Mr. Harris, Mr. Banning, and Ms. Stevenson are experienced, knowledgeable professionals. Their rates are reasonable.

*§ 330(a)(3)(C): Necessary/beneficial*. In part, the work done was necessary and beneficial.

*§ 330(a)(3)(D): Timeliness*. The work was timely. Four months to take the case from the petition date to plan confirmation is reasonable.

*§ 330(a)(3)(E): Skill/experience*. Messrs. Harris and Banning are experienced and skilled chapter 13 lawyers. Ms. Stevenson is an experienced and skilled bankruptcy paralegal.

*§ 330(a)(3)(F): Customary compensation in non-bankruptcy cases*. The rates charged are comparable to the rates of similarly experienced and skilled attorneys for nonbankruptcy work.

*Johnson factor ("JF") 1: Time and labor required?* If a "typical" chapter 13 case can be shepherded through plan confirmation for about $5,000 in attorney and paralegal fees, the time spent on such a case might look like this:

| Task | Atty ($250/hr.) | Paralegal ($150/hr.) | Fee |
|---|---|---|---|
| Petition, Schedules, SOFAs | 2.0 | 3.0 | $950 |
| Means test | | 1.0 | $150 |
| Plan drafting | 2.0 | | $500 |
| Claims review | 1.0 | | $250 |
| Mortgage review | .5 | | $125 |
| State tax issues; collecting and forwarding missing reports, returns, and affidavits | 1.0 | | $250 |
| § 341 meeting | 1.0 | | $250 |
| Plan confirmation work | 3.0 | | $750 |
| Communication with clients/ obtaining needed documents and information | 2.0 | 1.0 | $650 |
| Miscellany | 4.0 | 1.0 | $1,150 |
| Total | 16.5 | 6.0 | $5,025 |

Ms. Stevenson's time is not significantly far from this mark: she billed 7.3 hours. Mr. Banning, on the other hand, billed more than three times the estimated attorney time. Even if the case required more client interaction than average, the amount of time spent is high.

Several categories of work should be mentioned. First, it was never likely that Debtors' plan would pay creditors in full, so the 6.5 hours Counsel spent reviewing each proof of claim did not benefit the estate. Counsel should have let the trustee handle any necessary claim objections. *See* §§ 1302(b)(1) and 704(a)(5) ("the trustee shall . . . if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper").

Second, Counsel spent about 17 hours dealing with the trustee's objection to the proposed $600 plan payment. There were, however, only a handful of issues: is Mr. DeKeyzer's mother a dependent? Does she make regular contributions to household expenses? Are the budgeted expenses of $200 for telephone, $210 for pets, and $24 for gym appropriate? A stipulated plan payment amount should have been relatively easy to negotiate.

Third, the 3.0 hours spent preparing for and attending the § 341 meeting, which was held by Zoom, seems like a lot. The Court's hypothetical $5,000 case budgeted 1 hour for the § 341 meeting.

Fourth, 9.6 hours billed for communicating with the client and miscellany is high. The Court projected about 6 hours for these categories. Further, some of this time was for clerical work.

Finally, 5.7 hours for the two motions to incur debt, neither of which was seriously opposed, is high.[7] 2-3 hours seems more appropriate.

*JF 2: Novelty and difficulty of the questions?* It does not appear that any of the legal issues addressed in this bankruptcy case were particularly novel or difficult. Counsel spent a reasonable amount of time dealing with the Louisiana QDRO, which was probably the most novel issue in the case.

*JF 3: Skill requisite to perform the legal service properly?* Counsel's professionals have the requisite skills. The case was handled well.

*JF 4: Preclusion of other employment due to acceptance of the case?* There is no evidence that Counsel was precluded from other work by taking Debtors' bankruptcy case. Bankruptcy work in this district is at a low ebb.

---

[7] The trustee objected to the first motion to incur debt, but her objection was resolved three days later by the order granting the motion.

*JF 5: Customary fee?* In this district, the customary fee to take a "typical" chapter 13 case through plan confirmation is about $5,000 in attorney and paralegal fees, plus costs and tax. Compared to this figure, Counsel's $14,020 fee request is too high.

*JF 6: Whether the fee is fixed or contingent?* The fee is fixed.

*JF 7: Time limitations imposed by the client or circumstances?* There was no significant time pressure in this case. The two motions to incur debt were filed timely.

*JF 8: Amount involved and results obtained?* Claims filed totaled $412,018.64, including $253,146 in secured claims and $2,152 in priority tax claims. That is about average for a New Mexico chapter 13 case. Counsel obtained a good result for its client.

*JF 9: Experience, reputation, and ability of the attorneys?* Counsel's professionals are experienced and skilled in chapter 13 work.

*JF 10: Undesirability of the case?* There is no indication that this case was undesirable.

*JF 11: Nature and length of professional relationship with the client?* Not applicable.

*JF 12: Awards in similar cases?* As set out above, the attorney and paralegal fees charged for a "typical" chapter 13 case in this district are about $5,000, plus costs and tax.

The Court concludes that, giving Counsel the benefit of the doubt on the issues arising in this case, it would be reasonable to allow fees of $8,000, or $3,000 more than the typical, simple case. Taxes on fees will be reduced commensurately. Costs will be allowed as requested.

Conclusion

This is a successful case: Debtors have a confirmed plan, creditors will receive a substantial payment on their claims, and Debtors will discharge a significant amount of unsecured debt. Counsel spent a lot of time to achieve this result, however. The Court concludes that fees of $8,000, rather than the requested $14,020, are reasonable. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered:  April 9, 2021
Copies to: electronic notice recipients